UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| DEBRA BAGGETT and ) | |
| APRIL MARLBOROUGH on behalf of themselves ) | |
| and others similarly situated, ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 11- |
| v. ) | |
| ) | |
| MICHAEL J. ASHE, JR., and ) | |
| PATRICIA MURPHY, in their individual capacities, ) | |
| Defendants ) | |
| _____) | |

**COMPLAINT**

**I.     INTRODUCTION**

1.      This is a civil rights class action for money damages against Hampden County Sheriff

Michael J. Ashe, Jr., and Assistant Superintendent Patricia Murphy for permitting male guards at the

Western Massachusetts Regional Women's Correctional Center ("WCC") to view and videotape

strip-searches of women inmates. Women at the WCC who cannot remain in the general prison

population for mental health or disciplinary reasons are taken to the Segregation Unit. With four or

more officers present, the inmate must take off all her clothes and perform a series of actions: she

must lean forward, lift her arms, lift her breasts and, if large, her stomach, turn around, bend over,

spread her buttocks with her hands and cough, and stand up and face the wall. An officer with a

video camera stands a few feet away and records the entire strip search. This officer is almost always

male, in violation of the federal Constitution, Massachusetts law, national correctional standards, and

the basic human dignity that these authorities are supposed to protect.

2.      Defendants Ashe and Murphy are responsible for this unconstitutional practice.

They have created and maintained written strip search policies that permit male guards to record

naked women. They know of and condone the fact that in practice, the guard recording the women is almost always male.

3.      Debra Baggett, a former an inmate at WCC, suffers from mental illness, which resulted in her being taken to the Segregation Unit numerous times. April Marlborough, another former inmate, was also taken to the Segregation Unit; like many other inmates at WCC, Ms. Marlborough is a survivor of sexual abuse. Ms. Baggett and Ms. Marlborough seek to represent a class of women inmates at WCC who, like them, were strip searched while a male guard watched and took video. On information and belief, hundreds of women have been subjected to this humiliating and unconstitutional practice.

## II.      JURISDICTION

4.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## III.      PARTIES

5.      Named plaintiff Debra Baggett was at all times relevant to this complaint a resident of Massachusetts. Ms. Baggett was an inmate at the WCC from September 2008 to January 2010.

6.      Named plaintiff April Marlborough was at all times relevant to this complaint a resident of Massachusetts. Ms. Marlborough was an inmate at the WCC from May 2008 to April 2011.

7.      Defendant Michael J. Ashe, Jr. was at all times relevant to this complaint a resident of Massachusetts. He has been the Sheriff of Hampden County since 1974. He is sued in his individual capacity for actions taken under color of law.

8.      Defendant Patricia Murphy was at all times relevant to this complaint a resident of Massachusetts. She has been the assistant superintendent in charge of the WCC since it opened in 2007. She is sued in her individual capacity for actions taken under color of law.

## IV.   FACTS

9.      The Western Massachusetts Regional Women's Correctional Center in Chicopee opened in October 2007. It is operated by the Hampden County Sheriff's Department. It houses women detainees and convicted offenders from the four western counties in Massachusetts.

10.     The WCC houses approximately 230 women inmates. Most of the women have been convicted of, or are being detained for, nonviolent offenses. More than a third have mental health problems. Many have been victims of sexual assault or abuse.

11.     Inmates at the WCC who cannot remain in general population because they have mental health issues or need to be held in protective custody, or who commit certain disciplinary infractions, are taken to the Segregation Unit.

12.     Multiple officers conduct the move. The Shift Commander leads the team, which includes at least three other officers. If the inmate is initially noncompliant, the team includes at least four officers, wearing riot gear.

13.     To begin the move, the officers cuff the inmate's wrists and shackle her ankles. A female officer puts on gloves and conducts a thorough "pat search" of the inmate's full body.

14.     After leading the inmate into a cell in the Segregation Unit, the officers remove the inmate's cuffs and shackles.

15.     All inmates taken to segregation are strip searched, regardless of whether there is any reason to believe they may be concealing a weapon or other contraband.

16.     An officer tells the inmate to take off all of her clothes. If the inmate is menstruating, she must remove any tampon or pad she is using and hand it to a guard.

17.     Once naked, the inmate is ordered to lean forward and run her fingers through her hair, to remove her dentures if she wears them, to raise both arms, and then to lift her breasts. If she has a large midsection, she must "lift her stomach for visual inspection."

18.     A guard tells the inmate to turn around so that she is facing away from the officers. She is ordered to bend over, spread her buttocks apart with her hands, and cough. She must bend over far enough for guards to be able to see inside her anus and vagina.

19.     The inmate is ordered to stand up and face the wall, and to remain facing the wall until the officers exit the cell.

20.     During this entire process, an officer with a handheld video camera stands just outside the cell, a few feet away.

21.     The officer faces the inmate and records her naked body.

22.     This officer is almost always a male.

23.     The Shift Commander remains inside the cell throughout the strip search. About half the time, the Shift Commander is a male.

24.     Twenty years ago, the United States Court of Appeals for the First Circuit ruled that unless there is an emergency, cross-gender viewing of an inmate's naked body during a strip search "would (in all likelihood) violate the Fourth Amendment." *Cookish v. Powell,* 945 F.2d 441, 447 (1st Cir. 1991) (per curiam). Courts around the country have agreed. *See, e.g., Byrd v. Maricopa County Sheriff's Dep't,* 629 F.3d 1135, 1147 (9th Cir. 2011) (en banc) (describing the "litany of cases over the

last thirty years" finding that cross-gender strip searches in the absence of an emergency are unconstitutional).

25.     Massachusetts regulations governing county correctional facilities require that strip-searches be conducted "in relative privacy with as much dignity as possible … by staff the same sex as the inmate." 103 C.M.R. 924.06(3).

26.     American Correctional Association standards state that "[o]nly staff of the same sex as the offender participate in strip searches." ACA Adult Community Residential Services (4th ed.) 2C-06.

27.     The Prison Rape Elimination Act of 2003 called for the creation of a national commission to study the causes of prison sexual abuse and to develop standards designed to eradicate it. These standards, issued in June 2009, prohibit cross-gender strip searches and viewing of inmates' naked bodies except in an emergency. *See* National Prison Rape Elimination Commission Standards for the Prevention, Detection, Response, and Monitoring of Sexual Abuse in Adult Prisons and Jails, PP-4.

28.     Longstanding United Nations standards prohibit men from supervising women prisoners at all. See United Nations Standard Minimum Rules for the Treatment of Prisoners ¶ 53.

29.     Defendants' written procedures pay lip service to the well-established prohibition on male guards' viewing of female strip searches. In practice, however, guards do not follow the written procedures.

30.     WCC Policy and Procedure 3.1.7, titled "Inmate Movement," sets forth the procedures for moving an inmate to the Segregation Unit, including the requirement that the inmate be strip searched and that the entire process be videotaped.

31.     Until early 2010, the written procedure for videotaping the strip search stated, "The Response Officer operating the video camera, if male, stands outside the cell facing the Dayroom with the camera pointing inside the cell and records the inmate from the neck up."

32.     This written procedure was illogical and unworkable. The officer was to face away from the cell while recording activity behind his back inside the cell. It would be impossible to record the inmate from the neck up without looking through the camera lens or viewfinder. This is particularly so since the inmate moves during the procedure, bending over, twice, during the strip search. If the inmate moved or was moved to another part of the cell, the guard would not know this, and would not be able to continue recording her at all, unless he was looking at her.

33.     Because the written policy required guards to do the impossible, they disregarded it as a matter of course. Male guards faced inside the cell as they recorded the female inmates' naked bodies during the strip search.

34.     After receiving inquiries about the policy, Defendants changed the written policy in early 2010.

35.     The new policy states that the officer videotaping should be a female "unless impracticable to do so." In practice, male guards still almost always do the videotaping.

36.     The new written policy contains instructions on how male officers should videotape women. These instructions reflect what had been and remains the practice: male officers do not face away from the naked inmates and do not limit their recording to the neck up. The new written policy states simply that the "officer operating the video camera, if male, stands outside the cell with the camera pointing inside the cell and records the inmate."

37.     As Sheriff, Defendant Ashe is the final policymaker for the Hampden County Sheriff's Department. He is responsible for all of the policies of the department, including the movement and strip search policies of the WCC. His job responsibilities include ensuring that the policies and practices of the WCC comply with the Constitution.

38.     Defendant Murphy is in charge of overall operations at the WCC. She is responsible for creating and implementing the policies and practices of the facility. Her job responsibilities include ensuring that the policies and practices of the WCC comply with the Constitution.

39.     Defendants Ashe and Murphy created and implemented the written strip search and movement procedures for the WCC.

40.     They created and maintained these written policies with knowledge that male guards would routinely view naked female inmates as they were being strip searched, or with reckless disregard of this fact.

41.     Defendants Ashe and Murphy were aware that male staff were routinely viewing female inmates during these strip searches because women complained about this, formally and informally. However, Defendants permitted the practice to continue.

42.     Debra Baggett was taken to the Segregation Unit multiple times while she was an inmate at the WCC, mostly for mental health reasons. On one occasion, she asked to be taken into protective custody because she was too afraid to remain in general population after witnessing a fight. On this occasion, like every other time she was taken to segregation, she was strip searched in the manner described above, with a male officer directly viewing and videotaping her naked body from a few feet away. She felt humiliated and degraded.

43.     April Marlborough was taken to the Segregation Unit on one or more occasions for disciplinary reasons. She was strip searched in the manner described above, with a male officer directly viewing and videotaping her naked body from a few feet away. As a victim of sexual abuse as a child, she felt violated and dehumanized by this experience.

## V.     CLASS ACTION ALLEGATIONS

44.     This action is brought pursuant to Rule 23(a) and (b) (1) and (3) of the Federal Rules of Civil Procedure by the named Plaintiffs as a class action on behalf of all women taken to the Segregation Unit at WCC whose strip searches were videotaped by a male officer.

45.     The named plaintiffs, Debra Baggett and April Marlborough, are members of the class. The class represented by Plaintiffs is so numerous that joinder of all such persons is impractical. The practice described above has existed for a period going back more than three years before this complaint was filed. On information and belief, it has affected several hundred class members.

46.     There are questions of law and fact common to the class of plaintiffs. Central to all the claims is the nature and constitutionality of the practice at the WCC of having male guards view and film female inmates being strip searched upon being brought to the Segregation Unit.

47.     The named plaintiffs' claims or defenses are typical of the claims or defenses of the class of plaintiffs.

48.     The named plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Counsel for the plaintiffs is experienced and capable in civil rights litigation. Class counsel has successfully represented plaintiffs in other class actions alleging unlawful strip searches. Counsel has the resources and expertise to prosecute this action.

49.     This action is properly maintainable as a class action because the prosecutions of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the defendants.

50.     This action is properly maintainable as a class action because the prosecution of separate actions would create a risk of adjudications with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of the other members who are not parties or would substantially impair or impede their ability to protect their interests.

51.     This action is properly maintainable as a class action because the questions of law and fact common to the class predominate over any questions affecting only individual class members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

52.     As a direct result of the policy or practice as described above, class members have been subjected to unlawful strip searches, which have caused each member of the class to endure emotional distress, humiliation, and degradation.

## VI.    CLAIM

### Count One:    42 U.S.C. § 1983, Fourth and Fourteenth Amendments

53.     The above paragraphs are incorporated herein.

54.     Sheriff Ashe was the chief executive officer of the Hampden County Sheriff's Department. He created and implemented the movement and strip search policies at the WCC.

55.     Sheriff Ashe knew or recklessly disregarded that male guards were routinely viewing and videotaping female inmates being strip searched, in non-emergency situations, in violation of

the Fourth Amendment to the United States Constitution. He had an obligation to correct this practice so that it would conform to the Constitution.

56.     Assistant Superintendent Murphy was responsible for supervision and overall operations of the WCC. She created and implemented the movement and strip search policies at the WCC.

57.     Assistant Superintendent Murphy knew or recklessly disregarded that male guards were routinely viewing and videotaping female inmates being strip searched, in non-emergency situations, in violation of the Fourth Amendment to the United States Constitution. She had an obligation to correct this practice so that it would conform to the Constitution.

58.     By allowing the practice of routine male viewing and filming of naked women being strip searched to continue during the class period, Defendants Ashe and Murphy acted with reckless indifference to the constitutional rights of individuals who were held at the WCC as described above.

59.     Well before the class period, the law was clearly established that routine male viewing of naked female prisoners, in the absence of an emergency, violates the Constitution. By the actions described above, Defendants deprived the named plaintiffs and members of the plaintiff class of their clearly established right, guaranteed by the Constitution of the United States, to be free from unreasonable searches.

60.     As a direct and proximate result of this conduct, plaintiffs and the plaintiff class have suffered injuries as described above.

**WHEREFORE,** plaintiffs request that this Court:

(a)     Award compensatory damages and punitive damages to the named plaintiffs and to members of the plaintiff class;

(b)     Award plaintiffs the costs of this action including reasonable attorney's fees; and

(c)     Award whatever additional relief this Court deems necessary and appropriate.

## VII.   JURY DEMAND

A jury trial is hereby demanded.

                              RESPECTFULLY SUBMITTED,

                              /s/Howard Friedman
                              Howard Friedman, BBO #180080
                              **Law Offices of Howard Friedman, P.C.**
                              90 Canal Street, 5th Floor
                              Boston, MA 02114-2022
                              617-742-4100
                              hfriedman@civil-rights-law.com


                              /s/ David Milton
                              David Milton, BBO #668908
                              **Law Offices of Howard Friedman, P.C.**
                              90 Canal Street, 5th Floor
                              Boston, MA 02114-2022
                              617-742-4100
                              dmilton@civil-rights-law.com


Date: September 15, 2011